UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALBERT KNIGHT

                                 CIVIL ACTION

VERSUS

                         NO. 3:23-cv-469-JWD-SDJ

TURNER INDUSTRIES GROUP, L.L.C.
ET AL.

## RULING AND ORDER

This matter comes before the Court on the *Rule 12(b)(6) Motion to Dismiss Plaintiff's Intentional Tort Claim* (Doc. 7) (the "*MTD*") filed by Methanex USA, LLC and Methanex Louisiana, LLC (collectively, the "Methanex Defendants"). Plaintiff, Albert Knight, ("Knight" or "Plaintiff") opposes the motion. (Doc. 18.) Methanex Defendants have filed a reply. (Doc. 21.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons Methanex Defendants' *MTD* is granted. The Court will dismiss without prejudice Plaintiff's claim for intentional torts against Methanex Defendants, but Plaintiff will have leave to amend to cure the deficiencies outlined in this ruling.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following factual allegations are primarily taken from Plaintiff's *Original Petition* (the "*Petition*"). (Doc. 1-1.) The allegations are assumed to be true for purposes of this motion. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (citation omitted).

On or around February 4, 2023, Albert Knight was part of a crew assigned to install a check valve within the Methanex plant in Geismar, Louisiana, for his employer Turner Industries Group, L.L.C. ("Turner"). (*Original Pet.* ("*Pet.*"), Doc. 1-1 at 7.) This check valve was to be installed at

a location six feet above ground, requiring Knight to climb a scaffold to perform the installation. (*Id.*) As the check valve was moved into location with a crane, the valve slipped, falling on Plaintiff's hand, and crushing it. (*Id.*)

Plaintiff claims the scaffold he climbed for the job was too small, leaving him no means of escape when the check valve slipped. (*Id.* at 7–8.) Plaintiff sustained multiple broken bones in his left hand, injuries to his left shoulder, and mental and emotional damages from the incident. (*Id.* at 8.)

On May 10, 2023, Plaintiff filed suit in state court against (a) Methanex Defendants; (b) Turner; and (c) Scaffsource, LLC, and Brock Services, LLC ("Brock Defendants"). (*Id.* at 6–7.) As to Turner, Plaintiff claims, *inter alia*, that the flagger for the crane was a Turner employee who was not a certified rigger and was not qualified to be guiding the crane, making the operation extremely dangerous. (*Id.* at 7.) Plaintiff claims that Brock Defendants delivered and set up the scaffold prior to Plaintiff climbing it. (*Id.*) Finally, Plaintiff alleges that, "[u]pon information and belief, the scaffold had been selected by the Methanex Defendants." (*Id.*) The Court will provide greater detail about the specific allegations against Methanex Defendants below.

On June 20, 2023, Methanex Defendants filed a *Notice of Removal*, bringing the action to this Court. (Doc. 1.) On June 27, 2023, Methanex Defendants filed the instant *Rule 12(b)(6) Motion to Dismiss Plaintiff's Intentional Tort Claim*, alleging failure to state a claim upon which relief can be granted. (Doc. 7.) On the same day, Brock Defendants filed a substantially similar *Rule 12(b)(6) Motion to Dismiss* (Doc. 8) also attacking the intentional tort claim filed against them. The Court will take up that motion in a different ruling.

On July 20, 2023, Plaintiff filed a *Motion to Remand for Lack of Subject Matter Jurisdiction* (Doc. 19). Plaintiff argued that he "alleged an intentional tort cause of action against

Turner . . . [,] which Defendants admit is a non-diverse citizen of Louisiana." (*Id.* at 1.) On March 11, 2024, this Court denied the *Motion to Remand* and found that Turner was improperly joined. (Doc. 25.) Thus, this Court has diversity jurisdiction under 28 U.S.C. § 1332.

## II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes*, 624 F.3d at 210 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting

3

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing

*Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun*

*v. City of Hous. Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting

*Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion

to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts

set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which

judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc.*

*v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted).

## III.    DISCUSSION

### A.   Parties' Arguments

#### 1.   *Methanex Defendants' Original Memorandum (Doc. 7-1)*

Methanex Defendants' main argument is that the *Petition* "fails to set forth **any** facts

sufficient to support Plaintiff's intentional tort claim against the Methanex Defendants." (Doc. 7-

1 at 1.) The accepted definition of intent in the context of an intentional tort claim has been

identified by the Louisiana Supreme Court as follows:

> The meaning of "intent" is that the person who acts either (1)
> consciously desires the physical result of his act, whatever the
> likelihood of that result happening from his conduct; or (2) knows
> that that result is substantially certain to follow from his conduct,
> whatever his desire may be as to that result. Thus, intent has
> reference to the consequences of an act rather than to the act itself.

*Bazley v. Tortorich*, 397 So.2d 475, 481 (La. 1981). Plaintiff provided a "formulaic laundry list"

of conclusory allegations demonstrating that the Methanex Defendants were negligent, grossly

negligent, and in the alternative that the incident was intentional. (*Id.* at 4–6; *see* Doc. 1-1, at ¶¶ 24–

25.) However, Methanex Defendants allege that each of these conclusory allegations lack plainly sufficient factual content and instead assert nothing more than recited judicial terminology, consequently failing to establish intent. (Doc. 7-1 at 6.)

Methanex Defendants reference *Guillory v. Domtar Industries Inc.*, where the United States Fifth Circuit Court of Appeals stated, "[T]he substantially certain test is satisfied when . . . injury is 'almost certain' or 'virtually sure' to occur or is incapable of being avoided." (Doc. 7-1 at 7 (citing *Guillory*, 95 F.3d 1320, 1327 (5th Cir. 1996)).) They also cite to *Bourque v. Nan Ya Plastics Corp., America*, which found that "mere knowledge or appreciation of a work place risk is insufficient." (Doc. 7-1 at 7 (citing *Bourque*, 906 F. Supp. 348, 353 (M.D. La. 1995), *aff'd*, 157 F.3d 903 (5th Cir. 1998)).) Methanex Defendants also point to *Garcia v. Westlake Chem. Corp.*, where conclusory allegations of failure to provide proper safety equipment and failure to properly train were insufficient because "'there [were] no supporting facts to show that' the defendant was 'substantially certain' that harm would come to Plaintiff." (Doc. 7-1 at 7 (citing *Garcia*, No. 18-764, 2019 WL 4252801, at *7 (M.D. La. Aug. 22, 2019), *report and recommendation adopted*, No. 18-00764, 2019 WL 4247826 (M.D. La. Sept. 6, 2019)).)

Further, Methanex Defendants maintain that Plaintiff failed to state a plausible intentional tort claim under Louisiana law because of the failure to show that either they "(1) consciously desired the check valve to slip and fall on to Plaintiff and the scaffold not to provide Plaintiff with a means of escape when the check valve slipped; or (2) knew that it was virtually certain or inevitable that the check valve would slip and fall on to Plaintiff and Plaintiff would not have a means to escape being injured." (*Id*. at 7.)

### 2. *Plaintiff's Opposition (Doc. 18)*

Plaintiff responds that the *Petition* on its face satisfies Federal Rule of Civil Procedure's Rule 8(a)(2) "short and plain statement" requirement for complaints which do not allege fraud. (Doc. 18 at 1.) Specifically, Plaintiff contends that the "*Twombly*'s plausibility standard 'simply calls for enough facts to raise **a reasonable expectation that discovery will reveal [that the elements of the claim existed.]**'" (*Id*. at 4.)

Plaintiff alleges that when the allegations in his complaint are taken as true, Methanex Defendants are sufficiently put on notice of the nature of the intentional tort claim asserted against them. (*Id*. at 5.) Thus, the facts plausibly outlined in the *Petition*, namely, Methanex Defendants' selection of the scaffold to be used for the valve installation, assurance the constructed scaffold was adequate, and knowledge that the dangers of using a small and unsafe scaffolding made the injuries reasonably certain to occur, outline the accident, Plaintiff's injury, and Defendants' intentional or negligent role in connection with it. (*Id*.) Plaintiff cites several cases for the proposition that the *Petition* put Methanex Defendants on notice of the nature of the claims being brought against them meeting the applicable Rule 8 standard. (*Id*. at 5–7.) Further, Plaintiff maintains the position that such specificity may only be obtained in discovery and "without discovery, [ ] plaintiff has factually pled all that it can factually plead" to support his claim. (*Id.* at 7 (quoting *Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *5 (W.D. La. Feb. 9, 2011), *report and recommendation adopted*, No. 10-177, 2011 WL 917825 (W.D. La. Mar. 15, 2011)).)

### 3. *Methanex Defendants' Reply (Doc. 21)*

In reply, Methanex Defendants argue that it is undisputed whether "specific facts" are needed to satisfy Rule 8's pleading requirement. (Doc. 21 at 1.) However, Methanex Defendants

reassert that the *Petition* "fails to set forth ***any*** facts—specific or not—to support an intentional

tort claim against" them. (*Id.*) Specifically, Methanex Defendants dispute the significance of

Plaintiff's assertions in his opposition that (1) they "knew that the dangers of using a small and

unsafe scaffolding made the injuries reasonably certain to occur" and (2) it was "reasonably certain

that Plaintiff's injuries would occur, yet they proceeded anyway," arguing that the following

assertions are "nothing more than legal conclusions and are therefore insufficient to state a

plausible intentional tort claim against the Methanex Defendants." (Doc. 21 at 2; *see* Doc. 18 at

5.)

Methanex Defendants reassert relevant caselaw mentioned in the *MTD* and point out that

Plaintiff fails to address any of their cited cases. (Doc. 21 at 3.) Instead, Methanex Defendants

argue the case law Plaintiff does cite to outlines instances where a plaintiff pleads sufficient factual

allegations but not for an intentional tort claim. (*Id.* at 3.) The single intentional tort case the

Plaintiff does cite to found dismissal appropriate because the intentional tort allegations in the case

were largely conclusionary. (*Id.* at 4–5; Doc. 18 at n.36; *see Parkman v. W&T Offshore, Inc.*, 547

F. Supp. 3d 536, 545 (M.D. La. 2021) (deGravelles, J.).) Therefore, Methanex Defendants reiterate

their position that the *Petition* plainly lacks sufficient factual content for the Court to reasonably

infer that Plaintiff is entitled to recover against Methanex Defendants for an intentional tort. (*Id.*

at 5.)

### B.  Applicable Law

"An 'intentional act' requires the actor to either (1) consciously desire the physical result

of his act, whatever the likelihood of that result happening from his conduct; or (2) know that the

result is substantially certain to follow from his conduct, whatever his desire may be as to that

result." *Populars v. Trimac Transp.*, No. 19-316, 2022 WL 2824660, at *5 (M.D. La. June 10,

2022) (deGravelles, J.), *aff'd sub nom. Populars v. Trimac Transp., Inc.*, No. 22-30413, 2023 WL

20866 (5th Cir. Jan. 3, 2023) (citing *Matthews v. Turner Indus. Grp., LLP*, 2020-00493 (La.

6/22/20), 297 So. 3d 723 (emphasis omitted) (quoting *Cole v. State Dep't of Pub. Safety & Corr.*,

01-2123 (La. 9/4/02), 825 So. 2d 1134, 1140 and *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La.

1981))). "The focus is on the consequences of the act rather than the act itself: 'Only where the

actor entertained a desire to bring about the consequences that followed or where the actor believed

that the result was substantially certain to follow has an act been characterized as intentional.'"

*Walker v. Apple Studios La., LLC*, No. 23-168, 2024 WL 347893, at *4 (M.D. La. Jan. 30, 2024)

(Dick, C.J.) (quoting *White v. Monsanto Co.*, 585 So.2d 1205, 1208 (La. 1991)).

As this Court has recognized:

> "'Substantially certain to follow' requires more than a reasonable
> probability that an injury will occur and 'certain' has been defined
> to mean 'inevitable' or 'incapable of failing.'" *Jasmin v. HNV Cent.*
> *Riverfront Corp.,* [642 So. 2d 311,] 312 [La. App. 4 Cir. 1994].
> "[A]n employer's mere knowledge that a machine is dangerous and
> that its use creates a high probability that someone will eventually
> be injured is not sufficient to meet the 'substantial certainty'
> requirement." *Armstead v. Schwegmann Giant Super Markets, Inc.*,
> 618 So. 2d 1140, 1142 (La. App. 4 Cir. 1993), *writ denied*, 629 So.
> 2d 347 (La. 1993). "Further, mere knowledge and appreciation of a
> risk does not constitute intent, nor does reckless or wanton conduct
> by an employer constitute intentional wrongdoing." *Id.* (citing *Tapia*
> *v. Schwegmann Giant Supermarkets, Inc.*, 590 So. 2d 806, 807–808
> (La. App. 4 Cir. 1991)).

*Populars*, 2022 WL 2824660, at *5 (quoting *Stanley v. Airgas-Sw., Inc.*, 2015-0274 (La. 4/24/15),

171 So. 3d 915, 916–17).

Additionally, "[t]he 'belie[f] that someone may, or even probably will, eventually get hurt

if a workplace practice is continued does not rise to the level of intentional tort, but instead falls

within the range of negligent acts[.]'" *Id.* (quoting *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020

WL 1984327, at *10 (E.D. La. Apr. 27, 2020) (quoting *Reeves v. Structural Pres. Sys.*, 98-1795

(La. 3/12/99), 731 So. 2d 208, 214)).

> Even if the alleged conduct goes beyond aggravated negligence, and
> includes such elements as knowingly permitting a hazardous work
> condition to exist, knowingly ordering the claimant to perform an
> extremely dangerous job, or willfully failing to furnish a safe place
> to work, this still falls short of the kind of actual intention to injure
> that robs the injury of accidental character.

*Walker*, 2024 WL 347893, at *5 (quoting *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99),

731 So. 2d 208, 210; and then citing *Micele v. CPC of La., Inc.*, 98-0044 (La. App. 4 Cir. 3/25/98),

709 So. 2d 1065 (noting that courts in Louisiana "have cautioned that the intentional tort exception

should be narrowly construed, holding that mere knowledge and appreciation of a risk does not

constitute intent; reckless or wanton conduct, gross negligence, disregard of safety regulations or

the failure to use safety equipment by an employer does not constitute intentional wrongdoing")

(citations omitted)).

    This Court has further instructed:

> [E]ven an employer's knowledge that a situation is dangerous does
> not give rise to substantial certainty that injury will result. [*Williams
> v. Gervais F. Favrot Co.*, 573 So. 2d 533 (La. App. 4 Cir. 1991)
> (citing *Marino v. Martin's Oil Country Tubular, Inc.*, 931 So. 2d
> 1089, 1090 (La. 2006)).] . . . . Moreover, even knowledge that
> similar injuries have occurred in the past does not establish that
> injury is substantially certain to occur in the future, [*Snow v. Lenox
> Int'l*, 27,533 (La. App. 2 Cir. 11/1/95), 662 So. 2d 818, 820], and
> violations of safety standards are generally insufficient to fulfill the
> substantial certainty requirement. [*Reeves*, 731 So. 2d at 211.] An
> employer's failure to properly train an employee is insufficient to
> maintain an intentional tort claim, [(citations omitted)], as is the
> failure to use safety equipment by an employer. [*DelaHoussaye v.
> Morton Int'l Inc.*, 300 F. App'x 257, 258 (5th Cir. 2008) (citing
> *Micele*, 709 So. 2d at 1068)]. Likewise, "actions which lead to a
> 'high probability' of injury do not rise to the level of substantial
> certainty, and even where acts or omissions constitute gross
> negligence, the substantial certainty exception is not met."
> [*Chiasson v. Hexion Specialty Chems., Inc.*, No. 11-0959, 2012 WL

> 3683542, at *6 (E.D. La. Aug. 27, 2012) (quoting *Guillory*, 95 F.3d
> at 1327–28 (finding that even where some employees and
> supervisors were aware that several forks had detached from
> forklifts and some employees knew that subject forklift had fallen
> off, the evidence established only, at best, negligence)).

*Id.*

### C.  Analysis

Having carefully considered the matter, the Court will grant Methanex Defendants' *MTD*. Even construing the allegations of the *Petition* in a light most favorable to Plaintiff and drawing reasonable inferences in its favor, the Court finds that the *Petition* does not allege facts to support Plaintiff's assertion that an intentional tort was either consciously desired by Methanex Defendants or that they knew the accident was substantially certain to occur.

Plaintiff's intentional tort claim against Methandex Defendants is woefully inadequate. While Plaintiff cites a host of reasons why they were negligent,[1] the only allegations concerning any intentional tort committed by these defendants are merely the following:

---

[1] Plaintiff pleads that Methanex Defendants were negligent in the following ways:
:

    a.  Issuing permits to work on the scaffold after having actual knowledge of the dangerous conditions of the undersized scaffold in violation of general industry and safety standards;

    b.  Failing to adequately train employees and contractors on selecting scaffolds;

    c.  Failing to adequately train employees and contractors on aerial crane lifts;

    d.  Failing to plan the work at the Methanex plant in a way to allow for a safer method of installing the check valve;

    e.  Failing to recognize the scaffold in question as a hazard in both the planning and actual operations stages;

    f.  Unsafe work practices relating to issuing permits to allow access to the undersized scaffold;

25. Additionally, and in the alternative, the incident sued hereupon was substantially certain to occur. The dangerous nature and manner of work being performed made it substantially certain that the check valve would crush Plaintiff. Further, the Methanex Defendants—as the owners and/or operators of the Methanex plant, whose agents personally selected the scaffold—knew of the substantial dangers with sending Plaintiff onto a highly dangerous scaffold and knew that an incident of this sort was substantially certain to occur yet proceeded nevertheless.

(*Petition*, Doc. 1-1 at 11.)

Plaintiff's allegations are nothing more than legal conclusions. This lone paragraph does not provide well-pled allegations that speak to whether Methanex Defendants "entertained a desire

---

g.  Unsafe work practices relating to the installation of the check valve at the Methanex plant;

h.  Unsafe work practices with allowing individuals on scaffolds that are hazardous;

i.  Unsafe work practices with regard to using safety precautions before allowing individuals on scaffolds that are hazardous;

j.  Lack of safe and adequate materials and equipment for the safe installation of the check valve at the Methanex plant;

k.  Unsafe and/or lack of safe managerial policies, procedures, and training relating to the installation of check valves at the Methanex plant;

l.  Unsafe and inadequate supervision, including but not limited to supervision by Defendants' managers, supervisors, and employees for the plant;

m.  Failure to provide adequate safety equipment;

n.  Failure to provide a safe working environment;

o.  Instructing and/or authorizing Plaintiff to perform work in an unsafe manner;

p.  Failure to warn the other contractors of hazards that the Methanex Defendants were aware of with the undersized scaffold;

q.   Failure to warn Plaintiff of hidden dangers; and

r.  Other acts deemed negligent and grossly negligent.

(Doc. 1-1 at 9–11.)

to bring about the consequences that followed" or "believed that the result was substantially certain to follow . . . ." *Walker*, 2024 WL 347893, at *4 (quoting *White*, 585 So.2d at 1208). Again, the Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *In re Great Lakes*, 624 F.3d at 210 (quoting *Ferrer*, 484 F.3d at 780). Dismissal here is proper "despite the use of certain legal phrases in an attempt to transform the claims to intentional torts," such as "intentional" and "substantially certain." *Bonner v. Georgia-Pac., LLC*, No. 12-456, 2013 WL 2470466, at *3 (M.D. La. June 7, 2013). Indeed, it is a "well-established rule that use of words or phrases like 'intent,' 'conscious,' or 'substantially certain' in a pleading 'is not a 'talisman that can change allegations of gross negligence into colorable claims of true intentional torts.'" *Walker*, 2024 WL 347893, at *6 (quoting *Williams v. Fresenius USA Mfg., Inc.*, No. 09-5832, 2009 WL 10679751, at *4 (E.D. La. Oct. 15, 2009) (Barbier, J.) (quoting *Boudreaux v. Verret*, 422 So. 2d 1167, 1171 (La. Ct. App. 1982))); *see also Williams*, 2009 WL 10679751, at *4 (granting motion to dismiss and finding that plaintiff's "use of the phrase 'substantially certain' in the complaint do not transform these random sets of facts into an intentional act." (cleaned up)); *Walker*, 2024 WL 347893, at *7 (granting motion to dismiss intentional tort claims as "mirror[ing] those considered in . . . [other] cases [like *Williams*]").

Even if these allegations were not conclusory, they would be insufficient under the above caselaw. Again, Plaintiff claims that the "incident . . . was substantially certain to occur" based on (1) the "dangerous nature and manner of work being performed," and (2) the fact that the Methanex Defendants were owners of the plant and their "agents personally selected the scaffold[,] knew of the substantial dangers with sending Plaintiff onto a highly dangerous scaffold[,] and knew that an incident of this sort was substantially certain to occur." (*Petition*, Doc. 1-1 at 11.)

But similar allegations were rejected by *Walker*. There, Chief Judge Dick granted a motion to dismiss where plaintiff pled that injuries were substantially certain to occur given (1) "[Defendants'] knowledge of the risk of a cable suspended camera system while actors are directly below the system and in harms [sic] way';" and (2) the fact that "despite this knowledge, the Defendants choose to operate the cable suspended camera system in this unsafe manner with cast members directly below . . . [and] intentionally disregarded the known safety risks . . . .'" *Walker*, 2024 WL 347893, at \*1, \*7. Thus, for the same reasons given in *Walker*, Plaintiff's intentional tort claim fails.

Plaintiff's reliance on this Court's decision in *Parkman v. W&T Offshore, Inc.*, 547 F. Supp. 3d 536, 548 (M.D. La. 2021), is also misplaced. There, the issue was whether plaintiff had adequately pled an intentional tort so as to satisfy that exception to the LHWCA, which, the Fifth Circuit has suggested, "require[s] allegations of specific intent, and not merely allegations of 'substantial certainty' to support the claim." *Id.* (citing *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012)). Plaintiff had alleged that "[t]he dangerous nature and manner of work being performed made it substantially certain that Plaintiff would be injured during the highly dangerous lift, yet Defendants proceeded nevertheless." *Id.* This Court concluded, "[e]ven giving Plaintiff's Petition the most generous reading possible, he fails to meet the specific intent standard suggested in *Fisher*." *Id.* Thus, even if *Parkman* applied the same standard as Louisiana law on this issue (which it may not), it would not support Plaintiff's claim.

Rather, Plaintiff's allegations are substantially similar to those cases cited by *Walker* and *Populars*. Again,

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering the claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place

13

> to work, this still falls short of the kind of actual intention to injure
> that robs the injury of accidental character. Mere knowledge and
> appreciation of risk alone do not constitute intent. Furthermore, even
> an employer's knowledge that a situation is dangerous does not give
> rise to substantial certainty that injury will result.

*Walker*, 2024 WL 347893, at *5 (citations omitted).

Finally, as in *Walker*, Plaintiff contends that discovery is needed before more detailed

factual allegations can be made about Methanex Defendants' intentional acts, (Doc. 18 at 6–7),

but here, as in *Walker*, the Court rejects that argument. As Chief Judge Dick stated:

> Plaintiff ostensibly acknowledges the insufficiency of his pleadings
> in arguing that, "[a]s discovery in this matter progresses, the
> underlying cause of the systemic failure and intentional acts of each
> defendant will be brought to light." But no plaintiff is permitted to
> use the discovery process as a fishing expedition in the hopes of
> uncovering actionable conduct. Indeed, the Supreme Court has held
> that, although Rule 8 no longer requires hyper-technical pleading,
> "it does not unlock the doors of discovery for a plaintiff armed with
> nothing more than conclusions." [*Iqbal*, 556 U.S. at 678–79.] Thus,
> "a plaintiff cannot engage in discovery in an attempt to obtain facts
> that support a currently baseless claim." [*Lee v. Ard*, No. 17-23,
> 2017 WL 5349493, at *6 (M.D. La. Nov. 13, 2017) (internal
> quotation marks omitted).] "Discovery is not intended as a fishing
> expedition permitting the speculative pleading of a case first and
> then pursuing discovery to support it; the Plaintiff must have some
> basis in fact for the action." [*Russell v. Choicepoint Servs., Inc.*, 302
> F. Supp. 2d 654, 671 (E.D. La. 2004) (quoting *Zuk v. E. Pa.
> Psychiatric Inst. of the Med. Coll.*, 103 F.3d 294, 299 (3d Cir. 1996)
> (internal quotation marks omitted)).] "The discovery rules are
> designed to assist a party to prove a claim it reasonably believes to
> be viable without discovery, **not to find out if it has any basis for
> a claim.**" *Id.* (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894
> F.2d 1318, 1327 (Fed. Cir. 1990) (citing *Netto v. Amtrak*, 863 F.2d
> 1210, 1216 (5th Cir. 1989)) (internal quotation marks
> omitted)(emphasis added)).

*Walker*, 2024 WL 347893, at *7.

Here, even construing the *Petition* in a light most favorable to Plaintiff and drawing

reasonable inferences in his favor, Plaintiff has failed to plead "enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence" that Methanex Defendants committed an intentional tort. *Calhoun*, 855 F. App'x at 919–20 (citations omitted). Without that, Plaintiff is not entitled to discovery, and, as in *Walker*, his intentional tort claim must be dismissed. 2024 WL 347893, at *7.

In closing, the Court must emphasize a few critical points. First, the Court acknowledges, as Plaintiff argues, that there can be circumstances where a motion to dismiss survives in spite of the need for further discovery. *See Diamond Servs.*, 2011 WL 938785, at *6 ("It is true, of course, that the plaintiff fails to factually allege several critical elements of his claim. . . . However, factual details in these areas can only be obtained in discovery. Currently, only movants have these details. If such specific details were required to be specifically pled at this stage of the case, essentially no case of this type could ever survive a motion to dismiss, because the necessary facts would be in the sole possession of the defendant."). "It is precisely for this reason that the Court in *Iqbal* specifically recognized that whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Again, the pleading stage simply "calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]." *Id.* at *2 (quoting *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556)); *see also Calhoun*, 855 F. App'x at 919–20 (same). The Court here finds, based on the allegations of the *Petition*, that this is not one of those cases.

Second, while the above case law demonstrates that pleading an intentional tort claim can be difficult, the Court is certainly *not* holding that this burden is insurmountable. What the Court *is* holding is that, under the specific facts alleged in the *Petition* and based on the above cases, Plaintiff has failed to meet his burden of showing Methanex Defendants "consciously desire[d] the

physical result of [their] act" or "[knew] that the result [was] substantially certain to follow from [their] conduct." *See Populars*, 2022 WL 2824660, at *5. For all these reasons, Plaintiff's claim will be dismissed.

## IV.    LEAVE TO AMEND

Plaintiff asks in the alternative that, if the Court finds their intentional tort claim insufficient, the Court grant them leave to amend to cure these deficiencies. (Doc. 18 at 7.) In short, the Court will grant this relief.

"Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). "A court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1995). In *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, the court said:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

313 F.3d 305, 329 (5th Cir. 2002). Further:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the

16

> district judge doubts that the plaintiff will be able to overcome the
> shortcomings in the initial pleading. Thus, the cases make it clear
> that leave to amend the complaint should be refused only if it
> appears to a certainty that the plaintiff cannot state a claim. A district
> court's refusal to allow leave to amend is reviewed for abuse of
> discretion by the court of appeals. A wise judicial practice (and one
> that is commonly followed) would be to allow at least one
> amendment regardless of how unpromising the initial pleading
> appears because except in unusual circumstances it is unlikely that
> the district court will be able to determine conclusively on the face
> of a defective pleading whether the plaintiff actually can state a
> claim for relief.

*JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 642 (M.D. La. 2018) (deGravelles, J.)

(quoting 5b Charles A. Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1357

(3d ed. 2016)).

Here, Plaintiff has had no prior amendment, and there has been no ruling issued by this

Court assessing the sufficiency of his intentional tort claim. As a result, the Court will act in

accordance with the above "wise judicial practice" and grant Plaintiff leave to amend and cure the

above deficiencies. *See Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021)

(deGravelles, J.) (citing, *inter alia*, *Fetty v. La. State Bd. of Priv. Sec. Exam'rs*, 611 F. Supp. 3d

230, 250 (M.D. La. 2020) (deGravelles, J.)). However, given the high bar involved with this claim,

Plaintiff is reminded of his Rule 11 obligations.

## V.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Rule 12(b)(6) Motion to Dismiss Plaintiff's Intentional Tort*

*Claim* (Doc. 7) filed by Methanex USA, LLC, and Methanex Louisiana, LLC, is **GRANTED**, and

all intentional tort claims by Albert Knight against the Methanex Defendants are **DISMISSED**

**WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-eight (28) days from the Court's ruling on the Methanex Defendants' *MTD* (Doc. 7) in which to cure the above deficiencies. If Plaintiff fails to do so, Plaintiff's intentional tort claims against the Methanex Defendants will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on <u>March 11, 2024</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**